Jonathan MARTIN, Plaintiff,

v.

**SWARTZ CREEK COMMUNITY SCHOOLS, Defendant.**

No. CIV.03–75096.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 31, 2006.

Peter M. Bade, Joliat, Tosto, Flint, MI, for Plaintiff.

Timothy J. Mullins, Timothy R. Noonan, Cox, Hodgman, Troy, MI, for Defendant.

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

FEIKENS, District Judge.

Defendant school district moves for summary judgment on the Title IX (20 U.S.C. § 1681) and § 1983 claims brought against it by Plaintiff Jonathan Martin.[1] For the reasons below, I GRANT in part and DENY in part the motion.

### FACTUAL BACKGROUND

Jonathan Martin, who is openly gay, was a student at Swartz Creek High School during his freshman and sophomore years, but left the school midway through his sophomore year[2] on January 21, 2003. (Def.'s Br. in Support 1, 9; Pl.'s Br. 2, 5.) Neither side disputes that Defendant receives federal funding.

Plaintiff claims that the school officials at Swartz Creek High School did not do enough to combat the peer-on-peer harassment he experienced during his attendance, and as a result, he was deprived of his right to an education, and his civil rights were violated (he brings both a due process and an equal protection claim). Although the motion for summary judgment relates to all three counts (Title IX violation; violation of equal protection under § 1983; violation of due process under § 1983), Plaintiff's briefs include no direct rebuttal of the motion regarding the due process or equal protection claims.

Below is the list of incidents that, seen in a light most favorable to Plaintiff, support claims of a pattern of harassment. It is separated into three categories: (1) those incidents described in Plaintiff's brief that school officials were allegedly or

---

1. This case was originally brought by parents of Jonathan Martin, but as he has now turned eighteen, he is now Plaintiff.

2. At that time, school officials granted his request for a transfer to Mott Community College. (Def.'s Br. in Support 9; Pl.'s Br. 5.)

admittedly aware of; (2) those incidents described in Plaintiff's brief without an accompanying allegation that school officials witnessed or were otherwise made aware of them; and (3) those incidents discussed by Defendant (but not Plaintiff) in its briefing that, seen in a light most favorable to Plaintiff, could be considered part of the pattern of harassment. I describe any alleged response by school officials.

***Incidents Plaintiff Alleges School Officials Knew Occurred***

1.  A May 2002 incident in which a handwritten note reading "Up the Butt Giver" was included in a school mailing. The incident was reported to school officials. (Pl.'s Br. 3; Def.'s Br. in Support 4.) School officials could not identify the responsible party. (Def.'s Br. in Support 5–6.)

2.  A September 2002 incident during the homecoming all-school assembly, where a fellow student, Jake V., loudly asked if Martin "could suck a gold ball out of a garden hose." (Pl.'s Br. 2.) Martin alleges he complained to both the school counselor and the principal about this. (Pl.'s Dep. 71, 74–75.) Defendant does not allege a specific response.

3.  An October 25, 2002 incident where Jake V. poured nacho cheese on Martin's head in the lunchroom. (Pl.'s Br. 2; Def's Br. in Support 6.) Principal Michael Vanderlip spoke to Jake V., and Assistant Principal Jan Kauszlarich suspended Jake V. for three days. (Def.'s Br. in Support 7.) Defendant alleges there were no further complaints regarding Jake V. (*Id.*)

4.  Distribution of a fake newspaper article titled "Jon Martin is accused of displaying flagrant homosexuality" by two students, Jake V. and Patrick R., as well as the posting of this article on Martin's locker. (Pl.'s Br. 4.) Martin alleges he reported the distribution to school officials. (Pl.'s Br. 13.) Defendant does not allege a specific response to the posting of the fake article, and it is not clear whether this incident regarding Jake V. occurred before or after the nacho cheese incident (see previous item).

5.  Several incidents in which obscene messages were written on Martin's locker in the fall of 2002, including an incident where Patrick R. wrote "Fag Boy," which were reported to the administration. (Pl.'s Br. 4, 13.) Defendant agrees that the administration received complaints from Martin regarding this, but appear to contest that a specific student's name was mentioned in that complaint. (Def.'s Br. in Support 7.) Defendant alleges that Plaintiff's locker was cleaned each time it was defaced, that he was offered a locker at a new location, that the custodian was instructed to perform any needed cleaning immediately, and that a hall monitor was assigned to watch the locker with greater frequency. (Def.'s Br. in Support 8.) Defendant alleges this stopped the incidents. (*Id.*) Plaintiff alleges that the messages were allowed to remain on his locker for days, and that new ones appeared as soon as old ones were cleaned off. (Pl.'s Br. 4.)

6.  An incident where several students sprayed Martin with water and shouted obscenities, witnessed by Kauszlarich; Martin also alleges he complained verbally about the incident to her at the time. (*Id.*) Defendant does not allege a specific response.

7.  Plaintiff's April 15, 2002 complaint about Nick C. behavior. (Pl.'s Br. 13; Def.'s Br. in Support 3–4.) Kauszlarich met with Nick C. and according to

Defendants, told him to stay away from Plaintiff. (Def.'s Br. in Support 3–4.) Defendants allege Plaintiff did not make any further complaints about Nick C. (*Id.*) Plaintiff does not describe the nature or timing of his complaint about Nick C., but lists him as one of the students he allegedly told administrators was a "primary" harasser. (Pl.'s Br. 13.)

8. Plaintiff's May 2, 2002 complaint about Mike O's behavior. (Pl.'s Br. 13; Def.'s Br. in Support 4.) Allegedly, assistant Principal Bedell spoke to Mike O., and Defendant received no further complaints about Mike O. (Def.'s Br. in Support 4.) Plaintiff does not describe the nature or timing of his complaint about Mike O., but lists him as one of the students he allegedly told administrators was a "primary" harasser. (Pl.'s Br. 13.)

9. An assault in the hallway, which was accompanied by the epithet "faggot." (Pl.'s Br. 3.) This incident was allegedly witnessed by several teachers. (*Id.*) Plaintiff does not describe the timing of this incident. Defendant does not allege a specific response.

10. An incident where students threw bb pellets at Martin in the presence of a teacher; Martin also alleges he verbally complained about the incident to the teacher at the time. (*Id.*) Plaintiff does not describe the timing of this incident. Defendant does not allege a specific response.

11. An incident where students made derogatory comments about "gay-dar" in the presence of Principal Michael Vanderlip that Plaintiff also verbally reported to Vanderlip. (*Id.*) Plaintiff does not describe the timing of this incident. Defendant does not allege a specific response.

12. "Continuous" punching and shoving in the hallways, about which Martin alleges he complained to Kauszlarich. (Pl.'s Br. 3; Pl.'s Dep. 50.) Defendant does not allege a specific response.

13. An alleged statement in a health classroom, "AIDS Cures Queers," which Martin complained about to a teacher. (Pl.'s Br. 3; Pl.'s Dep. 147.) Defendant does not allege a specific response.

14. An unspecified incident that led to Plaintiff reporting that Jeff K. had harassed him. (Pl.'s Br. 13.) Defendant does not allege a specific response.

### Incidents Plaintiff Alleges Occurred, Without Allegations of Knowledge

15. Derogatory comments in the hallway, including "fucking faggot." (Pl.'s Br. 3.)

16. At least one incident of having his crotch and buttocks grabbed at by male students. (*Id.*)

### Additional Incidents Defendant Alleges Occurred With Its Knowledge [3]

17. A fight on February 26, 2002 that Martin had with Kaylee B. Defendant

---

**3.** In addition to the incidents detailed here, Defendant, in a section of its brief titled "fights with girls," alleges an additional three incidents in which Plaintiff was an aggressor. At least one court has considered evidence of the plaintiff's instigation of incidents to support the contention that the harassment was a result of personal animus and therefore was not actionable under Title IX. *Burwell v. Pekin Cmty High Sch. Dist. 303*, 213 F.Supp.2d 917 (C.D.Ill.2002). The three incidents alleged by Defendant, however, are different from the dozen-plus incidents alleged by Plaintiff, and do not involve any of the particular students alleged by Plaintiff to be peer aggressors. Therefore, these factual allegations would not

admits that the epithet "fairy-ass" was used in the exchange (presumably by Kaylee B.), and alleges the epithets "feminine bitch," "rich bitch," "nasty bitch," and "slut" were used (presumably by Martin). (Def.'s Br. in Support 1.) Plaintiff alleges that he did not make any "discriminatory" or "out of line" comment during the fight, nor was he a physical aggressor. (Pl.'s Dep. 53.) Defendant alleges that Kauszlarich spoke with both students, who agreed to refrain from further name calling, and that no complaints were made about Kaylee B. after that time. (Def.'s Br. in Support 1–2.)

18. A fight on March 25, 2002 that Martin had with Ryan A., for which both students were suspended by Kauszlarich. (Def.'s Br. in Support 3.) Defendant does not say why this fight was part of harassment (for instance, epithets used), but puts this incident under the heading "complaints about student harassment." (*Id.*)

19. Incidents in November 2002 where notes containing epithets were pushed inside of Plaintiff's locker,[4] but a culprit could not be identified. (Def.'s Br. in Support 7–8.) Defendant alleges Kauszlarich reassigned a hall monitor to watch the area of Plaintiff's locker with greater frequency. (*Id.*)

In addition to these incidents, there are some additional factual allegations that are relevant. Defendant alleges it investigated and, when possible, responded to every complaint Plaintiff made. (Br. in Support 9–10.) All specific responses Defendant argues it made are summarized above.

Defendant did not make a general allegation that it responded to incidents that occurred in the presence of school officials. Defendant argues Plaintiff has contradicted himself about whether reports of any incidents other than those Defendant discusses were made. (Def.'s Br. in Support 9.) Plaintiff claims that as a result of the harassment, he was brought to the "brink of suicide." (Pl.'s Br. 1.)

## ANALYSIS

### A. Motion for Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A fact is material only if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must view the evidence and any inferences drawn from the evidence in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted); *Redding v. St. Eward,* 241 F.3d 530, 532 (6th Cir.2001). The burden on the moving party is satisfied where there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The trial court has some discretion to determine whether the respondent's claim is plausible. *Betkerur v. Aultman Hosp. Ass'n,* 78 F.3d 1079,

---

support the "personal animus" theory. I do not see any other theory under which these incidents would be relevant to this case, and therefore, I will not summarize them here.

4. Plaintiff's brief only alleges posting of the fake news article and graffiti outside the locker.

1087–88 (6th Cir.1996). *See also, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989).

## B. Title IX Claims

### 1. Controlling Precedents

The Supreme Court teaches that in Title IX claims that allege peer-on-peer harassment, a school district may be liable for damages when it acts with deliberate indifference to acts of harassment of which it actually knew [5] if such harassment "is so severe, pervasive and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633, 642, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). The deliberate indifference standard requires that the school official's response must be "clearly unreasonable in light of the known circumstances." *Id.* at 648, 119 S.Ct. 1661. The Supreme Court has explained that behavior that would effectively bar access to an educational opportunity includes daily physical threats that prevent students from using a resource, but that "simple acts of teasing and name-calling" would not qualify. *Id.* at 650–52, 119 S.Ct. 1661. It is appropriate to consider the severity and persistence of the conduct, as well as whether the conduct is widespread. *Id.* at 652–53, 119 S.Ct. 1661.

There are two key published Sixth Circuit decisions applying the *Davis* decision: *Soper v. Hoben*, 195 F.3d 845 (1999) and *Vance v. Spencer County Pub. Sch. Dist.*, 231 F.3d 253 (2000). In *Soper*, the court found the plaintiff's evidence to be insufficient to sustain a Title IX claim; in *Vance*, the Sixth Circuit found that the plaintiff's evidence met the *Davis* standard. Both of these cases relied on a three-prong test drawn from *Davis:*

(1) the sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school; (2) the funding recipient had actual knowledge of the sexual harassment; and (3) the funding recipient was deliberately indifferent to the harassment.

*Vance*, 231 F.3d at 258–59 (citing *Soper*, 195 F.3d at 854).

*Soper* involved harassment, molestation, and rape of a female special education student on school property. The Sixth Circuit found the facts "obviously" demonstrated sufficient severity, pervasiveness, and objective offensiveness. 195 F.3d at 855. What the plaintiff lacked, the court said, was allegations to support a finding that the school district was deliberately indifferent. *Id.* After receiving the complaint,[6] the school district contacted the authorities, conducted their own investigation, installed windows in the classroom doors, placed an aide in the classroom, offered the Plaintiff an escort while in school, and set up student counseling sessions. *Id.* Once the criminal investigation was complete, the school expelled a student for his role in the incident. *Id.* Finding that this response was "prompt and thorough," the court found no Title IX liability. *Id.*

---

**5.** The Supreme Court rejected a "knew or should have known" standard. *Davis*, 526 U.S. at 642, 119 S.Ct. 1661.

**6.** The dissent makes clear that there was an allegation that prior to the rape, the plaintiff's mother had asked school officials not to leave her daughter alone with this particular stu-

dent, but that her daughter was left alone with this student and was raped. The majority apparently did not consider this enough evidence of deliberate indifference to allow the case to proceed. *Id.* at 855 (Moore, J., dissenting).

*Vance* involved allegations of student-on-student harassment because the plaintiff was suspected of being gay. 231 F.3d at 256. Two complaints were made to the school counselor in the 1992–93 school year, and the school responded by speaking to the children identified as harassers, or in one case, expelling a student. 231 F.3d at 256. The expelled student continued to harass the plaintiff upon his return. *Id.* During the fall semester of 1993, the plaintiff made a number of complaints against students. *Id.* School officials allegedly talked to some of the students but made no response to other complaints. *Id.* During the spring semester, the plaintiff made complaints of more serious behavior, including a physical assault in which two boys held her hands and another threatened to rape her until another student intervened. *Id.* The school responded by holding a meeting with the plaintiff and the students she complained about, in which she was seated between the boys and asked to tell the boys what she felt they had done wrong. *Id.* No punishment for the boys was alleged to have resulted. *Id.*

During the 1994–95 school year, the plaintiff in *Vance* alleged that she continued to make complaints to school officials about hitting or other unwanted touching in virtually every class, including some specific incidents. *Id.* at 257. The plaintiff alleged that either school officials spoke with the students but otherwise did not punish them, or failed to respond altogether. *Id.* This behavior continued after the plaintiff filed her lawsuit, and following an alleged death threat, she withdrew from the school. *Id.*

In finding that the plaintiff in *Vance* met all three prongs of the *Davis* test, the Sixth Circuit stated that:

> [W]here a school district has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances to eliminate the behavior. Where a school district has actual knowledge that its efforts to remediate are ineffective, and it continues to use those same methods to no avail, such district has failed to act reasonably in light of the known circumstances.

*Id.* at 261.

The Sixth Circuit found that the harassment alleged by the plaintiff was sufficiently severe, pervasive, and objectively offensive to meet the first prong. Finding the allegations in *Vance* were sufficient to show that the school district knew that "talking" to the responsible students, or even expelling one of them, had not ended the harassment, the Sixth Circuit found that allegations were sufficient to support the necessary finding a deliberate indifference. *Id.* at 262.

### 2. Application to the Case at Bar

#### a. Severity, Pervasiveness, and Objective Offensiveness

Plaintiff alleges he experienced harassment by more than a half-dozen different individuals over a period of many months, including not only name calling, but several assaults and incidents of unwanted touching, which in some cases allegedly caused injury. (*See, e.g.,* Pl.'s Dep. 52.) Plaintiff alleges the harassment occurred in the classrooms as well as in the halls, that he came to the "brink of suicide" as a result of the constant harassment, and that he transferred schools. (Pl.'s Br. 1.)

■ Although Plaintiff does not allege a rape or near-rape situation as in *Soper* and *Vance,* I do not believe that is required to find the harassment was sufficiently severe, pervasive, and objectively offensive under the standard articulated by the Supreme Court. The alleged conduct goes

well beyond teasing or name-calling: there are factual allegations that he was hit, had objects thrown at him, had hot melted cheese dumped on his head, and continually experienced verbal taunts. These allegations are sufficient to show severity, pervasiveness and objective offensiveness, even if the evidence is limited only to those incidents in which knowledge is alleged or admitted. *E.g., Montgomery v. Indep. Sch. Dist. No. 709,* 109 F.Supp.2d 1081 (D.Minn.2000) (unrelenting verbal taunts, coupled with physical incidents including throwing of objects and hitting, were sufficiently severe, pervasive, and objectively offensive); *Theno v. Tonganoxie Unified Sch. Dist No. 464,* 377 F.Supp.2d 952, 968 (D.Kan.2005) (despite lack of alleged physical incidents, "unrelenting" insults were sufficiently severe). Therefore, I find that Plaintiff has made sufficient allegations to survive the first prong of the Title IX claim.

### b. Actual Knowledge

■ By its own admission, the Swartz Creek school district was aware of at least one incident (that supports a claim of harassment) in each of February, March, and April of 2002, and two incidents in May. (Def.'s Br. in Support 1–4.) It also admits that when school reconvened that fall, one incident in October required suspension, and in November, there were repeated problems with slurs written on and pushed into Plaintiff's locker. (Def.'s Br. in Support 6–7.) Plaintiff further alleges that beyond these incidents, he made many more complaints to officials, and that many incidents occurred in the presence of school officials. ("Factual Background" supra.) Defendant claims that school officials responded to all complaints, but does not specify the response to some incidents Plaintiff claims to have reported and fails to address entirely the response to several incidents Plaintiff says school officials witnessed. ("Factual Background" supra.) Thus, there is a question of fact for the jury on whether the school district had the requisite knowledge.

However there are two incidents (numbers 15 and 16) Plaintiff mentions that are not accompanied by an allegation that they were reported to school officials or witnessed by these officials. For these two incidents, there is no evidence supporting actual knowledge by Defendant. As a result, such incidents cannot be support for Plaintiff's case. Therefore, I find those two incidents cannot be considered when weighing the Title IX claim. Because the remaining incidents collectively satisfy both the severity prong and the knowledge prong, I will turn to whether there are sufficient allegations of deliberate indifference.

### c. Deliberate Indifference

■ By its own admission, Defendant knew of and responded to at least one incident a month (and sometimes two) during the end of Plaintiff's freshman year and the beginning of his sophomore year. (Def.'s Br. in Support 1–7.) In other words, Defendant's factual allegations alone provide evidence of the school's awareness of continuing incidents of alleged harassment that did not diminish in frequency despite Defendant's response. (*Id.*) The admitted fact that Plaintiff continued to make complaints of harassment every single month, and that the school district's efforts to discuss these events or otherwise punish individual student harassers did not abate the frequency or severity of such incidents, might alone create a jury question of whether the school was deliberately indifferent (i.e., that it was required to take other types of action to eliminate the behavior in light of those circumstances). When coupled with Plaintiff's many allegations of behavior that was

witnessed by Defendant officials with no response, there is no question that Plaintiff has provided sufficient evidence of deliberate indifference. If the jury were to accept Plaintiff's testimony, even if it believed the school district responded to every formal complaint, it might find deliberate indifference in the district's failing to respond to incidents officials witnessed unless Plaintiff made an official complaint.

*d. Conclusion—Title IX Claim*

I DENY summary judgment as to the Title IX claim, but note that any incident unaccompanied by an allegation of Defendant's knowledge cannot be used to support the Title IX claim.

## C. Equal Protection Claim

Defendant moves for summary judgment on the equal protection claim brought under 42 U.S.C. § 1983, and Plaintiff's brief never responds to this portion of Defendant's motion specifically. "The Equal Protection Clause requires public institutions to 'treat similarly situated individuals in a similar manner.'" *Wayne v. Shadowen*, 15 Fed.Appx. 271 (6th Cir.2001) (quoting *Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1360 (6th Cir.1996)). "In opposition to a motion for summary judgment, it is plaintiff who possesses the burden of demonstrating that the defendants treated similarly situated individuals in a disparate manner." *Buchanan*, at 1360. Plaintiff makes no allegation that similarly situated individuals exist, much less that they were treated differently. Therefore, I GRANT summary judgment on the equal protection claim.

## D. Substantive Due Process Claim

Defendant moves for summary judgment on the substantive due process claim, and Plaintiff's brief never responds

to this portion of Defendant's motion specifically. To make a claim for damages under 42 U.S.C. § 1983, a plaintiff needs to show (1) a deprivation of a federal right (2) committed by an individual acting under color of law. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120–21, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). The Sixth Circuit has held that a school district's failure to prevent peer-on-peer harassment is not a deprivation of a federal right, and therefore no § 1983 claim can lie in this situation. *Soper v. Hoben*, 195 F.3d 845, 852–53 (6th Cir.1999). Therefore, I GRANT summary judgment on the due process claim.

## CONCLUSION

I GRANT IN PART and DENY IN PART Defendant's Motion for Summary Judgment. Specifically, I GRANT summary judgment on the equal protection and due process claims, and in addition, find that incidents for which there is no allegation of actual knowledge by Defendant cannot be used in support of the Title IX claim. I DENY the remainder of Defendant's motion on the Title IX claim, because the remainder of Plaintiff's allegations are sufficient for a reasonable jury to find a Title IX violation occurred.

**IT IS SO ORDERED.**